Kevin Behrendt, State Bar No. 211879
Kevin@DermerBehrendt.com
Jeffrey D. Dermer, State Bar No. 229903
Jeff@DermerBehrendt.com
Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
Telephone:   (310) 266-1075
Facsimile:    (310) 954-9206

Attorneys for Relator Plaintiff Spohn Ranch, Inc.

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES, THE STATES OF
CALIFORNIA, DELAWARE,
NEVADA, NEW YORK,  and
TENNESSEE, and the
COMMONWEALTHS OF
MASSACHUSSETS and VIRGINIA *ex
rel*. Spohn Ranch, Inc., a California
corporation,

        Plaintiff,

        v.

AMERICAN RAMP COMPANY, INC.,
a Missouri Corporation,  Nathan Bemo,
an individual, SchuBemo Holdings, Inc.,
a Missouri Corporation, , and DOES  1-
10,

        Defendants.

CASE NO. 2:10-cv-09785-DSF-AGR

**FIRST AMENDED COMPLAINT
FOR VIOLATATION OF FEDERAL
AND STATE FALSE CLAIMS ACTS**

**JURY TRIAL DEMANDED**

**INTRODUCTION**

1.      Relator, Spohn Ranch, Inc., ("Relator"), brings this action to recover damages and civil penalties on behalf the United States, seven states including cities and other public entities therein, arising from defendant American Ramp Company, Inc.'s ("ARC") false statements, claims, and actions constituting fraud under the various false claims statues.  This case arises under federal question and diversity jurisdiction.  Supplemental jurisdiction applies to the state law claims.

2.      ARC has been engaged, since at least 2004, in a campaign of knowing misrepresentation about the safety and specifications of its Pro Series line of steel skatepark equipment.  The Pro Series consists of various types of ramps and obstacles.  Skateboarders, typically under sixteen years of age, will ride their skateboards over, around, and through this equipment while frequently attempting to perform acrobatic moves.

3.      The customers for skatepark equipment are almost entirely local government entities such as cities, counties, or special recreation districts.   ARC sells its equipment directly as well as indirectly, as a subcontractor or through state purchasing-agreements.

4.      ARC is a skatepark equipment manufacturer that has the lion's share of the steel equipment market – which is the lower-end of the market, with concrete parks at the high-end.  ARC has claimed to generate approximately $10,000,000 per year in revenue, of which approximately 80% of ARC's sales are from its "Pro Series" line of steel ramps.

5.      For at least six years, ARC has knowingly represented that this equipment, as advertised, meets its own specifications for structural soundness when it knows that it does not.  ARC does so by communicating these requirements in "product specification" materials that it sends to prospective and actual customers, both directly, and through general contractors, independent sales agencies, and state

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

1   contracts, with the intent that public entities receive and rely on the representations,
2   promises, and statements therein.  ARC not only makes these representations (which
3   are part of the actual contracts constituting the "claims") but it also consistently
4   encourages, if not demands, that its customers to adopt them verbatim as part of their
5   bidding specifications.  ARC uses these false representations to create single bid or no
6   bid contracts that allow it to generate super-competitive profits.  ARC has done this
7   despite the fact that it sells to the public and that children are the primary users of its
8   equipment.   In so doing, ARC and its management, has placed profits over people.
9       6.    ARC has successfully marketed its Pro Series as all-steel skatepark
10  equipment that has "fastener free riding surfaces."  The "fastener free" aspect of the
11  Pro Series is its competitive advantage -- ARC advertises this claim in every possible
12  way, from letters, to brochures, catalogs, websites, email, and actual product
13  specifications.  ARC has simultaneously represented that this "fastener free"
14  equipment meets specific structural specifications when it knows it does not.  ARC
15  has been so successful at marketing the Pro Series that these specifications have
16  become the industry standard in the steel skatepark equipment market.  ARC has
17  succeeded in this endeavor partially because there were no prior third-party standards
18  defining proper loads nor regarding whether riding surfaces should be fastener free.
19  Cities and other purchasers are also typically purchasing their first and only park;
20  thus, they are uneducated and lack any objective information to rely upon.
21      7.    Any competitor seeking to sell to government entities must either meet
22  these specs or be excluded from the public contracting process as 'non-responsive.'
23  ARC has threatened to, and, in fact, sued to enforce these specific standards.  ARC's
24  ability to market and sell a product that is fastener free and which meets these
25  standards is what has enabled it to dominate the market and generate millions of
26  dollars in profits.  ARC has in turn used these profits to seek to enter and dominate all
27  other skatepark building markets with the eventual goal of controlling the entire
28  industry.

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

8.     ARC's specifications, which are the industry standard and have been for many years, require that a third-party, licensed professional engineer verify that the fastener-free equipment will meet the structural loads in its bid specifications.

9.     ARC represents that its Pro Series is the "safest" because it can meet these loads without the "hundreds" of fasteners that other companies use (according to ARC).  The use of fasteners is "hazardous" according to ARC's own product catalogs.  Yet, ARC's Pro Series equipment is routinely installed with fasteners.

10.     ARC also represents that its Pro Series equipment meets specific engineering loads, as tested and verified by a licensed, third-party engineer.  Yet, ARC, since at least 2004 and continuing to the current day, has rigged its testing regime to defraud its customers into believing that ARC's equipment actually meets these specifications.  In reality, ARC has never sought to have its equipment tested as "fastener free" all-steel equipment.  Rather, ARC instructed its third-party engineer to test its equipment for structural soundness *only with fasteners* (otherwise known as "anchors").  ARC did this without informing its engineer of the representations that it has made regarding how the equipment is intended to be used or how the equipment is actually installed.

11.     ARC has done this because it knows that steel ramps that are not fastened (or anchored) through their riding surface into concrete or asphalt cannot meet the load requirements that it specified and marketed to become the industry standard for "safety."  Without fasteners (a type of bolt) through the riding surfaces, the equipment is unlikely to be flush to the ground and has no means of bearing the various types of weight, wind, and flood loads, among others, that make up its specifications.  In other words, ARC has done this because it knows its equipment, as specified and advertised, is not structurally sound according to its own definition of soundness.  Yet, ARC has never informed its customers that its specifications are not only not being met but have been deliberately tested around; ARC has no basis to

make the claims it has made; and, in fact, has every basis to know that its claims are untrue as a matter of fact.

12.    As a result, ARC has fraudulently induced public entities to purchase millions of dollars worth of equipment -- thereby putting the lives of children at risk and defrauding the public of badly needed funds.  According to ARC's own estimates, the Pro Series revenues amount to roughly $40,000,000 or more since 2004.  Of that, approximately 15 percent of the Pro Series equipment sold was sold to the real parties.  Accordingly, ARC, in addition to the civil penalties, is potentially liable for $18,000,000 in damages, after trebling.  This amount is certain to increase due to ARC's continuing fraud and the expansion of false claims acts to additional states where ARC continues to engage in its fraudulent scheme.

13.    Relator sues on behalf of the United States, States of California, Delaware, Nevada, New York, Tennessee, and the Commonwealths of Massachusetts and Virginia, and cities and other municipal corporations/public agencies located within these States/Commonwealths (collectively, the "real parties in interest" or "Real Parties.") arising from defendant American Ramp Company, Inc.'s ("ARC") (and its agents and alter-egos) false statements, claims, and actions constituting fraud under the Federal False Claims Act, and the following state false claim acts ("State False Claims Acts") (collectively, the "Acts"), California False Claims Act, Cal. Gov't Code §§ 12650 *et seq*.,  Delaware False Claims and Reporting Act, 6 Del. C. §§ 1201 *et seq*., Massachusetts False Claims Law, Mass. Gen. Laws ch 12 §§ 5A *et seq*, Nevada False Claims Act, Nev. Rev. Stat. Ann. §§ 357.10, New York False Claims Act N.Y. State Finance Law, Article 13 §§ 187 *et seq*., Tennessee False Claims Act, Tenn. Code Ann §§ 4-18-101 *et seq*, and Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 *et seq* (collectively, the non-federal acts shall be referenced as the "State Acts").  The real parties in interest defrauded by ARC include the federal government, and, without limitation, all cities and public agencies listed on Exhibit 1 and all cities and public agencies purchasing any ARC "Pro Series" skatepark

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

1  equipment during the limitations period in any of the States and Commonwealths set
2  forth above and continuing through the present day.

3      14.    Relator, through an independent investigation, has gathered evidence that
4  proves the fraud described above.   Relator was able to acquire this information
5  directly from ARC's third-party engineer, Daniel Ryan.  Relator was only able to
6  know what questions to ask by virtue of going through its own product-development
7  process for a competing all-steel system in early 2009.  Relator inspected many Pro
8  Series installations.  Relator's allegations are based upon conversations with Ryan, a
9  sworn declaration confirming the content of these conversations, and subsequent
10 further investigation that ruled out the possibility of innocent conduct.  Ryan's sworn
11 statement proves that, in conjunction with Relator's investigation, ARC's statements,
12 promises, and representations, were false, and were made with possession of
13 sufficient knowledge that ARC knew they were false.

14     15.    Relator has sought to locate evidence of the existence of another
15 engineer or testing regime that could negate the obvious conclusion of fraud
16 contained in these allegations.  Despite numerous public record act requests as well as
17 conversations with city officials and other persons who may have knowledge, Relator
18 has found no references to any engineers other than Ryan.  Relator has found no
19 evidence of any other verification or testing engagement or regime that could even
20 suggest that ARC might have a basis for making the representations, claims, and
21 promises that it has.

22     16.    The Acts provide that any person who submits or causes to be submitted,
23 a false or fraudulent claim to a governmental entity for payment or approval is liable
24 for a civil penalty up to $12,000 per such claim or record, plus treble damages.  The
25 Acts further provide that any person having information regarding a false or
26 fraudulent claim against the government may bring an action on behalf of him or
27 herself (the "*qui tam* plaintiff" or "relator") and the government and to share in the
28 recovery, including costs of investigation and attorneys' fees.

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

17.     Based on those provisions, Relator seeks to recover damages and civil penalties arising from defendant ARC's actions in presenting false records, statements, and claims to its federal, state, and local government customers.

## PARTIES

18.     Relator Spohn Ranch, Inc. ("Spohn" or "Relator") is domiciled and headquartered in Industry, California.  Spohn is a high-end provider of concrete and hybrid steel and wood, skateparks.  Spohn acted, investigated, and acquired its personal knowledge through its corporate agents, who have personal knowledge of the matters alleged and of the evidence proving the allegations.  Spohn has existed prior to ARC and prior to the acts alleged in this complaint.  Spohn, in early 2009, sought to develop a new product line to compete directly with the Pro Series.  Spohn, as a result, went through the entire product-development process including inspecting and analyzing numerous Pro Series installations.  Spohn's goal was to develop a product that could meet the specifications of the Pro Series equipment.  Spohn recognized that the Pro Series had become so prolific at the low-end of the market that there was no other choice and ARC's profit margin reflected this.  Spohn intended to bring prices down, provide consumers more choice, and sell a better designed and more safely installed product.  The Pro Series structural specifications (among other of its specifications) were the industry standard.  Spohn also became aware of the identity of the third-party engineer that ARC engaged to test and verify the Pro Series equipment's specifications.  Spohn then obtained information, including a sworn statement, from this engineer that are the basis of the allegations contained herein.  This information is not public and would never have been discovered but for Spohn's actions and pre-existing, private knowledge.  Through use of this private information, Relator was able to further investigate to determine the scope of the false representations and eliminate the possibility that ARC may not have known that its representations, statements, and records used to make claims on the Real Parties were made knowingly or in reckless disregard of the truth.  Accordingly,

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

1    Relator is an "original source" of the information upon which this Complaint is based
2    and has made the necessary pre-filing disclosures to fall within the protection of each
3    false claim act set forth herein.

4        19.    Real Parties, on whose behalf Relator brings this suit, are the United
5    States, the States of California, Delaware, Nevada, New York, and Tennessee, and the
6    Commonwealths of Massachusetts and Virginia.  The State of California and the
7    affected municipalities cover every district in California.  Malibu, Banning, and La
8    Canada are located within this Central District.  The acts and omissions constituting
9    the fraudulent acts and the consequent injuries to those plaintiffs occurred (and
10   continue to occur) in Los Angeles County and this District.  California's fundamental
11   public policy in enforcing its long-standing and liberally-construed false claims act
12   required the case be brought in the state.  The other Real Parties are sovereign states
13   and local governments.

14       20.    Defendant American Ramp Company, Inc., ("ARC") is a Missouri
15   corporation, headquartered in Joplin, Missouri.  Joplin is in the West District of
16   Missouri, with local venue in the Jefferson City branch/division.  Jefferson City is
17   over 100 miles from St. Louis and Kansas City, which are the major airports in the
18   region.  ARC is run by its two owners, Nathan W. Bemo ("Bemo") and John Daman
19   Schuber ("Schuber").

20       21.    Bemo and Schuber own ARC through their holding company,
21   SchuBemo Holdings, Inc. ("SchuBemo"). SchuBemo is headquartered in Joplin,
22   Missouri.  SchuBemo owns or controls, directly or through ARC, numerous other
23   ARC-related entities such as Harcore Shotcrete Skateparks, Inc., World Skate Parks,
24   Canadian Ramp Company, and many others.

25       22.    Bemo is an individual domiciled in Missouri.  Bemo, at all relevant
26   times, dominated the actions of ARC.  He not only held ownership and engaged in
27   joint control along with Schuber, but he also personally made many, if not all, the
28   false statements, representations, and promises, that are the subject for this

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

Complaint.  Moreover, he also directly controlled the marketing, product development, and quality assurance functions within ARC that provided him with the knowledge of both the true facts and the represented facts that are the basis of ARC's fraud.

23.     Defendants DOES 1 through 10 are sued as fictitious names, their true names and capacities being unknown to Relator. When their true names and capacities are ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities. Each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and those defendants proximately caused, are responsible for, and/or are legally liable for Real Parties damages as herein alleged. Each reference in this Complaint to Defendant, Defendants, a specifically named Defendant refers to and includes all Defendants sued under fictitious names.

24.     At all times herein mentioned, Defendants were acting as if there were but one entity and each of them have a unity of interests.  Bemo and Schuber at all times controlled the conduct of all other defendants, which are undercapitalized and are used for the purpose of limiting liability for risky activities while the benefits flow into and out of them and have been paid to, and are controlled, by Bemo and Schuber. Defendants commingle funds, operate out of the same offices, and corporate formalities are not respected among them.

25.     Whenever in this Complaint reference is made to any act of Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 10, or their officers, agents, managers, representatives, employees, heirs, assignees, customers and tenants, did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except where alleged to the contrary.

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of the Federal False Claims Act ("FCA") action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a). This Court has jurisdiction over the state false claims acts pursuant to 28 U.S.C. § 1367 and 31 U.S.C. §3732(b) because the state false claims arise from the same transactions and occurrences.  This Court also has jurisdiction under 28 U.S.C. § 1332.  Relator is domiciled in California.  Real parties are domiciled in several states but in no case is any plaintiff domiciled in Missouri.  All defendants are domiciled in Missouri.  Defendants have caused damages in an unknown amount but in any case it is estimated to be over $15,000,000.

27.     Personal jurisdiction over defendants is proper pursuant to U.S.C. § 3732 (a), which provides that FCA actions may be brought in any district where one or more defendants transacts business or in which any act proscribed by Section 3729 occurred.  All defendants conduct business in California and in the Central District of California.  The Central District is the home to skateboarding and, consequently, ARC and its affiliated defendants have regularly travelled and conducted business in Los Angeles, including with the City of Los Angeles.  Real Parties Malibu, Banning, La Canada are domiciled within the Central District.  Many of the material acts of fraud, including the fraudulent representations, sales of the goods, submission of false claims, and eventual installation of the equipment occurred in the Central District. Defendants have continuously and systematically availed themselves of California law by soliciting customers, selling, delivering, installing, and maintaining business in California.

28.     Venue is therefore proper in this district pursuant to 31 U.S.C. 3732(a) because defendants transact business in the Central District of California and because many of the acts alleged occurred within the Central District.  The California Act, which is the most liberal of all of the Acts, illustrates a fundamental public policy of protecting California state and local governments from fraud, which therefore

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

suggests venue is not only proper in the Central District but preferable under the facts as alleged in this Complaint.

**FACTS COMMON TO ALL COUNTS**

**A.    AMERICAN RAMP DEVELOPS AND SELLS THE PRO SERIES AS A "FASTENER FREE" RAMP SYSTEM THAT HAS BEEN TESTED TO MEET MINIMUM LOAD REQUIREMENTS**

29.    In 1998, Bemo partnered with Daman Schuber and formed the American Ramp Company, in Joplin, MO. In 2000, ARC began selling the Pro Series equipment.  The Pro Series is "pre-engineered" and "pre-manufactured" prior to shipping.  ARC, instead of building skateparks for the private sector, decided to focus on building skateparks for municipalities and military bases.

30.    ARC, as a skatepark equipment manufacturer, has the lion's share of the steel equipment market – which is the lower-end of the market.  ARC has claimed to generate approximately $10,000,000 per year in revenue, of which approximately 80% of ARC's sales are from its "Pro Series" line of steel ramps.

31.    ARC, in its catalogs and under oath, has claimed the Pro Series represents somewhere between 70 and 80 percent of its sales.  ARC claimed to have generated over $11 million in sales in 2008, which means that the Pro Series equipment amounted to $7 to $9 million in sales that year.  All of those sales are fraudulent.  Many of those sales are made in states without false claims act laws.  Yet, conservatively, some $5 to $7 million of sales fall within the statutory period and were made to Real Parties.  After trebling, damages thus exceed $15,000,000 and may be in excess of $20,000,000.

32.    ARC is an owner-dominated business.  Bemo and Schuber are its two primary executives; they control all the stock, and dominate all of its actions and decision-making.  Each is directly involved in the sales process, from developing and testing products (Bemo is reputed to have tested "30" types of coating for the Pro

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

Series equipment), developing and executing marketing strategies, managing the installation and sales process directly, attending trade shows, determining corporate strategy, and otherwise personally controlling substantially all ARC's material decisions and its affiliates.

33.     The Pro Series is ARC's primary product-line.  ARC claims that it accounts for the majority of its revenue.  ARC has circulated and submitted identical or substantially identical specifications for the Pro Series since at least 2004.

34.     ARC has submitted the Pro Series specifications, wherein it makes the representations of fact at the core of this lawsuit, at least once, and typically more than once, to each of the Real Parties set forth in Exhibit 1.  ARC has made similar representations to real parties covered by the Acts that Relator has not yet identified. ARC has absolute knowledge as to the extent of its fraud because each and every governmental entity covered by the Acts that purchased Pro Series equipment is a victim in the very same way as the Real Parties.  ARC submits its specifications (and thus makes its representations) as part of its sales pitch, which includes its attempt to convince governmental entities to adopt the Pro Series specs as their own (frequently, with success).  ARC also makes these representations in its bid packages, which are more detailed.  ARC makes similar representations in other communications supporting its bid submissions by email, web site, brochure, and letter.  ARC also submits the same materials to prime contractors when necessary to sell to public entities, including Real Parties, with the intent that the prime contractor unknowingly communicate the false promises, statements, and representations on its behalf.  ARC similarly seeks to have the administrators of collective-purchasing agreements (frequently adopted pursuant to joint-powers authority granted to municipalities under state laws) adopt and communicate its specifications in the same manner.   ARC also knowingly submits the same documents and/or makes the same representations to local governments and other intermediaries with the purpose of obtaining federal grant monies (such as Community Development Block Grants) to fund the purchase

and sale of ARC's Pro Series products.  ARC's actions are consistent and systematic. ARC's methods and scheme is thus the same for each false claim; the only distinction is the price of the contract and the number of misrepresentations.

35.     As alleged, Bemo frequently wrote letters to each of Real Parties referencing the specifications as part of ARC's bid proposal.

36.     For example, in a letter to the City of Chowchilla, California, dated  July 29, 2005, Bemo represented that "[b]ecause there are no fasteners on the riding surface the ride is smooth, safe, and there is not a paper-based product (Skatelite Pro) to maintain and replace."  ARC submitted its typical Pro Series specifications, which have not changed to the present day with respect to the issues presented herein.

37.     For example, the Pro Series Specs included under the same cover wherein Bemo puts the Pro Series "fastener free" surface at the forefront of its claimed safety advantage, provide under Specification 1.03 "System Description":

    A.    Performance Requirements:

        1.    Contractor must provide approved documentation from a licensed Professional Engineer that equipment will withstand all the loads listed below:

            a.  Live Load case: 60psf

            b.  Live Load case: 500lb point

            c.  Wind Load: 20psf (positive and negative)

            d.  Combination Load: Dead + 0.75(Live + Wind)

            e.  Handrail Load case: 50plf

            f.  Handrail Load case: 200lb point

            g.  Flood Load: 172psf at 2.75ft dynamic surcharge depth

38.     Thus, Chowchilla was promised that it would receive skatepark equipment that was steel, had fastener-free surfaces, and that a licensed Professional Engineer had verified the equipment's ability to withstand these loads.  Yet, ARC's self-directed testing of this equipment was conducted only under the assumption that

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

there were many fasteners (also called "anchors") through the riding surface. Not only that, but ARC did not inform its engineer that ARC had been representing and marketing its equipment *only without that anchoring*. Nor did ARC even inform its engineer whether it installed the equipment in conformity with the engineer's testing assumptions, which ARC itself provided. ARC's engineer thereby lacked sufficient information to take any remedial action.

39. Chowchilla (as is the case with all the Real Parties), even moreso than Ryan, lacked sufficient information to put it on notice as to ARC's diabolical subterfuge. All it knew that it was supposed to receive a "fastener free" product that had been properly tested, according to ARC's representations. It never received any information regarding the methods of testing, any qualifications of that testing, the absence of any other valid testing or analysis, or any other information that could possibly lead a reasonable purchasing agent or similar employee to suspect anything was amiss. Nor did it receive any information suggesting that ARC's installations were frequently done with fasteners through the riding surface.

40. ARC was sufficiently proud of its Chowchilla park that it has included it as a "reference" of a "recent park" in its bid packets. For example, in a 2008 "bid letter" to Real Party La Canada, California, Bemo included "general information about our company and the products and services that we offer." Bemo represented that ARC offers "stamped drawings for our equipment" among other things. Bemo also asserted that this $121,977.56 bid to La Canada would meet the specifications of its existing Pro Series equipment. The Chowchilla reference is the first reference provided.

41. ARC didn't just submit these specifications and promises in response to public bids or requests for proposals -- it deliberately sought to acquire a competitive advantage by convincing government entities, including Real Parties, to adopt its standards as its own. For example, in 2008, ARC's Sales Representative (and current sales manager), John Hunter, sent an email to Henry Perezalonso, of Real Party

Mountain View, seeking to do just that.  ARC submitted its Pro Series specifications which, on their first line, state "[I]f you would like to ensure the quality and precision levels that our [Pro Series] has to offer, feel free to copy and paste these specifications onto your city's letterhead and use for bid."

42.     This document, which ARC sends to its potential customers considering a public bid, contains language for a governmental resolution adopting the procedures for the particular bid, and provides that the equipment must meet the Pro Series specifications, including, the professional-engineer verifications of the load-bearing requirements (#7) and the "Fastener Free Surface" requirement (#11) that provides that "no screw/bolt heads on any riding surface will be accepted."  Additionally, ARC seeks to clarify any ambiguity by including specification #33, "Stamped Drawings," which states that a bidder "[m]ust supply with bid, engineered stamped drawings showing equipment is structurally sound."  Each section has a box for "Yes, in compliance" or "No, not in compliance."  Similar documents have been systematically submitted to the Real Parties from 2004 through the current day.

43.     These documents are merely representative examples of the systematic set of product specifications and representations that ARC, frequently acting directly through Bemo, has engaged in over the past six years.  ARC's catalogs are replete with references to its "fastener free" product as is its website.  Nowhere are any caveats, disclaimers, or suggestions that the "fastener free" feature is mutually exclusive with structural soundness or any other reason why actual installations have fasteners through the riding surface.

44.     There simply is no question that ARC's entire operation, which generates over $2 million per year in profit, is based entirely upon selling "fastener free" steel equipment to the public.  Nor is there any question that it knows this equipment does not meet its own specifications -- specifications that have become the industry standard (due to ARC's relentless and extreme selling tactics).  As a result, children

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

are skating on unsafe, untested equipment and Real Parties have been systematically looted in violation of the Acts (and common-law notions of fraud).

45.     The danger of ARC's equipment is not mere conjecture.  Relator's investigation has located at least one fatality on Pro Series equipment.  ARC's defective equipment may be have been a direct or partial cause of this death.

**B.     RELATOR, AFTER SEEKING TO ENTER THE STEEL MARKET, BECOMES SKEPTICAL OF WHETHER AMERICAN RAMP'S EQUIPMENT MET ITS SPECIFICATION.**

46.     In early 2009, Spohn decided to enter the low-end steel market that ARC dominates.  Spohn recognized that the ARC specifications for structural load-bearing and a third-party engineer willing to certify the equipment as meeting them had become an industry standard and were required to compete against ARC.  As part of its own design and product development process, Spohn considered the feasibility of whether a "fastener free" riding surface was possible while meeting the load-bearing specifications.  Spohn, after analyzing the issue, concluded that the only way it could make a safe product, and one that met the load-bearing requirements, was to not only have fasteners through the riding surface for the purpose of anchoring the equipment, but to pre-drill those holes during fabrication.  Spohn considered any other choice unsafe.

47.     In mid 2010, Relator, through its independent investigation, discovered the identity of ARC's third-party engineer who had apparently produced a report for ARC for a 2004 project in Rockaway Beach, New York.  Relator contacted the engineer, Daniel Ryan of Ryan Engineering, Inc.  After several discussions, Relator obtained Ryan's sworn testimony about the methodology and assumptions used to evaluate Pro Series equipment.

48.     Ryan's declaration, which continues to be non-public information and is the basis of the allegations herein, provides that ARC had, in fact, instructed him to

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

test the strength of the Pro Series *only* with numerous fasteners put through the riding surface of the equipment. ARC also provided the minimum load requirements that had to be met. The Pro Series equipment, as configured, met the minimum standards that ARC provided. However, the configuration was completely irrelevant to ARC's Pro Series specifications and representations because it required fasteners (also called anchors) through the riding surface. ARC deliberately tested a completely different product to obtain Ryan's professional approval. Nor did ARC inform Ryan that it represented its products in a mutually exclusive configuration or whether it, in fact, did install them according to Ryan's analysis.

49. ARC thus had no basis upon which to make any representation that the Pro Series is both fastener-free and that it meets contractual specifications. They are mutually exclusive. Yet, ARC made these representations to obtain the contracts (and payments) with (and from) Real Parties. These representations relate to the key features of the products and amount to a fraudulent inducement of the agreements in their entirety, as well as false statements and records. ARC's specifications are incorporated directly into those contracts (and are industry standard for the competition).

50. The most disturbing aspect of ARC's conduct is that its misrepresentations relate directly to "safety." On the one hand, anchoring (or "fastening") the Pro Series as ARC's testing regime required makes it "hazardous" equipment. Conversely, if ARC seeks to comply with its representations then it, at best, has absolutely no idea whether the equipment meets its own self-defined standard or, at worst, knows that it doesn't.

51. ARC, according to its own catalogs, generates 70-80% of its revenues from its Pro Series ramps. Without that product line, it likely does not exist. In other words, ARC's going concern is predicated on a long-running fraudulent scheme. This scheme has not only defrauded Real Parties of millions of dollars but has also placed

1   many young skaters in harm's way due to equipment that is unsafe because it can

2   move or collapse or that must be installed in what ARC admits is a "hazardous" way.

3       52.    The real parties in interest have all suffered damages in at least the

4   amount of the defective goods purchased.  Thus, ARC should be liable for three times

5   the replacement cost of all the equipment in addition to multiple civil penalties for

6   each public contract due to the multiple false records, representations, and statements

7   undergirding each contract and subsequent invoice(s).

8

## FIRST CAUSE OF ACTION
### Substantive Violations of Federal False Claims Act
### 31 U.S.C. 3729(a)(1), (a)(2),and 3732(b)

11      53.    Relator re-alleges and incorporates herein by reference paragraphs 1

12  through 52 in this Complaint.

13      54.    This is a claim for treble damages and forfeitures under the Federal False

14  Claims Act, 31 U.S.C. § 3729 *et seq*, as amended.

15      55.    Through the acts described above, defendant ARC, its agents, employees

16  and co-conspirators, knowingly presented and caused to be presented to the United

17  States, including without limitation the Armed Forces of the United States, the federal

18  military entities listed on Exhibit 1, significant numbers of local government

19  recipients of Community Development Block Grants (as well as other grants) and its

20  officials (collectively "United States"), false and fraudulent claims, and knowingly

21  failed to disclose material facts, to obtain payment and approval from the United

22  States and its contractors, grantees, and other recipients of its funds.

23      56.    Through the acts described above, defendant ARC, its agents, employees

24  and co-conspirators, knowingly made, used and caused to be made and used false

25  records and statements, which also omitted material facts, to induce the United States

26  and its contractors and grantees to approve and pay false and fraudulent claims.

27      57.    The United States, unaware of the falsity of the records, statements, and

28  claims made and submitted by defendant ARC, its agents, employees, and co-

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

conspirators, and as a result thereof, paid money that it otherwise would not have paid.

58.     By reason of the payment made by the United States, as a result of defendant ARC's fraud, the United States has suffered millions of dollars in damages and continues to be damaged.

### SECOND CAUSE OF ACTION
### Substantive Violations of California False Claims Act
### Cal Gov't Code § 12650(a)(1)(2) and (3)

59.     Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 58 of this Complaint.  This is a claim for treble damages and forfeitures under the California False Claims Act, Cal. Gov't Code § 12650 *et seq*.

60.     Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly presented and caused to be presented to the State of California and any political subdivision thereof that purchased ARC Pro Series equipment from 2004 and present, including without limitation the California political subdivisions listed on Exhibit 1, (collectively the "California Real Parties") and their officials false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from those California Real Parties and their contractors, grantees, and other recipients of their funds.

61.     Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the California Real Parties (and each of them) and their contractors, and grantees to approve and pay false and fraudulent claims.

62.     The California Real Parties, unaware of the falsity of the records, statements, and claims made and submitted by defendant ARC, its agents, employees, and co-conspirators, and as a result thereof, paid money that they otherwise would not have paid.

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

63.     By reason of the payment made by the California Real Parties, and each of them, as a result of defendant ARC's fraud, the California Real Parties, and each of them, have more than a millions of dollars in damages and continue to be damaged.

64.     The California Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made or presented by defendant ARC.

### THIRD CAUSE OF ACTION
**Substantive Violations of California False Claims Act
Cal Gov't Code § 12650(a)(8)**

65.     Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 64 of this Complaint.

66.     This is a claim for treble damages and forfeitures under the California False Claims Act, Cal. Gov't Code § 12650 et seq.

67.     Through the acts described above, defendant ARC, its agents, employees and co-conspirators became the beneficiaries of the inadvertent submission of false claims to California Real Parties and subsequently discovered the falsity of the claims.

68.     Defendant ARC failed to disclose the false claims to California Real Parties, or any of them, within a reasonable time after discovery that the claims were false.

69.     By reason of defendant ARC's failure to disclose the false claims to California Real Parties, those Real Parties, and each of them, have more than a million of dollars in damages and continue to be damaged.

70.     The California Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made used or presented by defendant ARC.

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

## FOURTH CAUSE OF ACTION
### Substantive Violations of Delaware False Claims Act
### 6. Del. Code Ann. 1201(a)(1),(2), and (3)

71.    Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 70 of this Complaint.  This is a claim for treble damages and forfeitures under the Delaware False Claims Act, 6 Del. Code Ann §§ 1201 *et seq.*

72.    Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly presented and caused to be presented to the State of Delaware and any political subdivision thereof that purchased ARC Pro Series equipment from 2004 and present, including without limitation the Delaware political subdivisions listed on Exhibit 1, (collectively the "Delaware Real Parties") and their officials false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from those Delaware Real Parties and their contractors, grantees, and other recipients of their funds.

73.    Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the Delaware Real Parties (and each of them) and their contractors, and grantees to approve and pay false and fraudulent claims.

74.    The Delaware Real Parties, unaware of the falsity of the records, statements, and claims made and submitted by defendant ARC, its agents, employees, and co-conspirators, and as a result thereof, paid money that they otherwise would not have paid.

75.    By reason of the payment made by the Delaware Real Parties, and each of them, as a result of defendant ARC's fraud, the Delaware Real Parties, and each of them, have more than a millions of dollars in damages and continue to be damaged.

76.    The Delaware Real Parties, and each of them, are entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim made, used, presented or caused to be made or presented by defendant ARC.

# FIFTH CAUSE OF ACTION
## Substantive Violations of Nevada False Claims Act
### Nevada Rev. Stat. Ann § 357.040(1)(a),(b), and (c)

77.     Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 76 of this Complaint.  This is a claim for treble damages and forfeitures under the Nevada Submission of False Claims to State or Local Government Act, Nev. Revised Statutes §§ 357.010 *et seq.*

78.     Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly presented and caused to be presented to the State of Nevada and any political subdivision thereof that purchased ARC Pro Series equipment from 2004 and present, including without limitation the Nevada political subdivisions listed on Exhibit 1, (collectively the "Nevada Real Parties") and their officials false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from those Nevada Real Parties and their contractors, grantees, and other recipients of their funds.

79.     Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the Nevada Real Parties (and each of them) and their contractors, and grantees to approve and pay false and fraudulent claims.

80.     The Nevada Real Parties, unaware of the falsity of the records, statements, and claims made and submitted by defendant ARC, its agents, employees, and co-conspirators, and as a result thereof, paid money that they otherwise would not have paid.

81.     By reason of the payment made by the Nevada Real Parties, and each of them, as a result of defendant ARC's fraud, the Nevada Real Parties, and each of them, have more than a millions of dollars in damages and continue to be damaged.

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

82.   The Nevada Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made or presented by defendant ARC.

**SIXTH CAUSE OF ACTION**
**Substantive Violations of Nevada False Claims Act**
**Nevada Rev. Stat. Ann § 357.040(1)(h)**

83.   Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 82 of this Complaint.

84.   This is a claim for treble damages and forfeitures under the Nevada Submission of False Claims to State or Local Government Act, Nev. Revised Statutes §§ 357.010 *et seq.*

85.   Through the acts described above, defendant ARC, its agents, employees and co-conspirators became the beneficiaries of the inadvertent submission of false claims to Nevada Real Parties and subsequently discovered the falsity of the claims.

86.   Defendant ARC failed to disclose the false claims to Nevada Real Parties, or any of them, within a reasonable time after discovery that the claims were false.

87.   By reason of defendant ARC's failure to disclose the false claims to Nevada Real Parties, those Real Parties, and each of them, have more than a million of dollars in damages and continue to be damaged.

88.   The Nevada Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made used or presented by defendant ARC.

**SEVENTH CAUSE OF ACTION**
**Substantive Violations of New York False Claims Act**
**New York Fin. Law § 189(1)(a),(b), and (c)**

89.   Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 88 of this Complaint.  This is a claim for treble damages and forfeitures under the New York False Claims Act, New York Fin. Law §§ 187 *et seq.*

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

90.    Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly presented and caused to be presented to the State of New York and any political subdivision thereof that purchased ARC Pro Series equipment from 2004 and present, including without limitation the New York political subdivisions listed on Exhibit 1, (collectively the " New York Real Parties") and their officials false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from those New York Real Parties and their contractors, grantees, and other recipients of their funds.

91.    Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the New York Real Parties (and each of them) and their contractors, and grantees to approve and pay false and fraudulent claims.

92.    The New York Real Parties, unaware of the falsity of the records, statements, and claims made and submitted by defendant ARC, its agents, employees, and co-conspirators, and as a result thereof, paid money that they otherwise would not have paid.

93.    By reason of the payment made by the New York Real Parties, and each of them, as a result of defendant ARC's fraud, the New York Real Parties, and each of them, have more than a millions of dollars in damages and continue to be damaged, including consequential damages.

94.    The New York Real Parties, and each of them, are entitled to the maximum penalty of $12,000 for each and every false or fraudulent claim made, used, presented or caused to be made or presented by defendant ARC.

**EIGHTH CAUSE OF ACTION**
**Substantive Violations of Tennessee False Claims Act**
**Tenn. Stat. 4-18-103(a)(1),(2), and (3)**

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

95.    Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 94 of this Complaint.  This is a claim for treble damages and forfeitures under the Tennessee False Claims Act, Tenn. State. Ann. §§ 4-18-101 *et seq*.

96.    Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly presented and caused to be presented to the State of Tennessee and any political subdivision thereof that purchased ARC Pro Series equipment from 2004 and present, including without limitation the Tennessee political subdivisions listed on Exhibit 1, (collectively the " Tennessee Real Parties") and their officials false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from those Tennessee Real Parties and their contractors, grantees, and other recipients of their funds.

97.    Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the Tennessee Real Parties (and each of them) and their contractors, and grantees to approve and pay false and fraudulent claims.

98.    The Tennessee Real Parties, unaware of the falsity of the records, statements, and claims made and submitted by defendant ARC, its agents, employees, and co-conspirators, and as a result thereof, paid money that they otherwise would not have paid.

99.    By reason of the payment made by the Tennessee Real Parties, and each of them, as a result of defendant ARC's fraud, the Tennessee Real Parties, and each of them, have more than a millions of dollars in damages and continue to be damaged.

100.    The Tennessee Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made or presented by defendant ARC.

## NINTH CAUSE OF ACTION

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

**Substantive Violations of Tennessee False Claims Act**
**Tenn. Stat. 4-18-103(a)(8),(9)**

101.   Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

102.   This is a claim for treble damages and forfeitures under the Tennessee False Claims Act, Tenn. State. Ann. §§ 4-18-101 *et seq*.

103.   Through the acts described above, defendant ARC, its agents, employees and co-conspirators became the beneficiaries of the inadvertent submission of false claims to Tennessee Real Parties and subsequently discovered the falsity of the claims.

104.   Defendant ARC failed to disclose the false claims to Tennessee Real Parties, or any of them, within a reasonable time after discovery that the claims were false.

105.   By reason of defendant ARC's failure to disclose the false claims to Tennessee Real Parties, those Real Parties, and each of them, have more than a million of dollars in damages and continue to be damaged.

106.   The Tennessee Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made used or presented by defendant ARC.

**TENTH CAUSE OF ACTION**
**Substantive Violations of Massachusetts False Claims Act**
**Mass. Ch. 12 § 5B (1),(2), and (3)**

107.   Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 106 of this Complaint.  This is a claim for treble damages and forfeitures under the Massachusetts False Claims Act, Mass. Ch. 12 §§ 5A *et seq*.

108.   Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly presented and caused to be presented to the Commonwealth of Massachusetts and any political subdivision thereof that purchased ARC Pro Series equipment from 2004 and present, including without limitation the

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

Massachusetts political subdivisions listed on Exhibit 1, (collectively the " Massachusetts Real Parties") and their officials false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from those Massachusetts Real Parties and their contractors, grantees, and other recipients of their funds.

109.   Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the Massachusetts Real Parties (and each of them) and their contractors, and grantees to approve and pay false and fraudulent claims.

110.   The Massachusetts Real Parties, unaware of the falsity of the records, statements, and claims made and submitted by defendant ARC, its agents, employees, and co-conspirators, and as a result thereof, paid money that they otherwise would not have paid.

111.   By reason of the payment made by the Massachusetts Real Parties, and each of them, as a result of defendant ARC's fraud, the Massachusetts Real Parties, and each of them, have more than a millions of dollars in damages and continue to be damaged.

112.   The Massachusetts Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made or presented by defendant ARC.

### ELEVENTH CAUSE OF ACTION
**Substantive Violations of Massachusetts False Claims Act**
**Mass. Ch. 12 § 5B (9)**

113.   Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 112  of this Complaint.

114.   This is a claim for treble damages and forfeitures under the Massachusetts False Claims Act, Mass. Ch. 12 §§ 5A *et seq.*

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

115. Through the acts described above, defendant ARC, its agents, employees and co-conspirators became the beneficiaries of the inadvertent submission of false claims to Massachusetts Real Parties and subsequently discovered the falsity of the claims.

116. Defendant ARC failed to disclose the false claims to Massachusetts Real Parties, or any of them, within a reasonable time after discovery that the claims were false.

117. By reason of defendant ARC's failure to disclose the false claims to Massachusetts Real Parties, those Real Parties, and each of them, have more than a million of dollars in damages and continue to be damaged.

118. The Massachusetts Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made used or presented by defendant ARC.

## TWELFTH CAUSE OF ACTION
### Substantive Violations of Virginia Fraud Against Taxpayers Act
### Va. Code Ann. §§ 8.01-216.3(a)(1) and (a)(2)

119. Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 118 of this Complaint. This is a claim for treble damages and forfeitures under the Virginia Fraud Against Tax Payers Act, Va. Code Ann. §§ 8.01-216.1 *et seq.*

120. Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly presented and caused to be presented to the Commonwealth of Virginia and any political subdivision thereof that purchased ARC Pro Series equipment from 2004 and present, including without limitation the Virginia political subdivisions listed on Exhibit 1, (collectively the "Virginia Real Parties") and their officials false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from those Virginia Real Parties and their contractors, grantees, and other recipients of their funds.

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

121.   Through the acts described above, defendant ARC, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the Virginia Real Parties (and each of them) and their contractors, and grantees to approve and pay false and fraudulent claims.

122.   The Virginia Real Parties, unaware of the falsity of the records, statements, and claims made and submitted by defendant ARC, its agents, employees, and co-conspirators, and as a result thereof, paid money that they otherwise would not have paid.

123.   By reason of the payment made by the Virginia Real Parties, and each of them, as a result of defendant ARC's fraud, the Virginia Real Parties, and each of them, have more than a millions of dollars in damages and continue to be damaged.

124.   The Virginia Real Parties, and each of them, are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made or presented by defendant ARC

## PRAYER FOR RELIEF

WHEREFORE, Relator respectfully prays for judgment against Defendants as follows:

1.   That Defendants be ordered to cease and desist from representing the Pro Series equipment as "fastener free" and for violating the false claims act statutes as set forth and alleged, above;

2.   That a preliminary injunction issue, in aid of this Court's jurisdiction under the Federal and State Acts, precluding Defendants from dissipating or transferring assets outside the ordinary course of business;

3.   That the Court enter judgment against Defendants in amount equal to three times the damages the United States has sustained in violation of the Federal

Dermer Behrendt
13101 Washington Blvd. Ste 407
Los Angeles, CA 90066
(310) 266-1075

False Claims Act, as well as $11,000 for each violation of the act, and pre-judgment interest on these amounts;

4.    That the Court enter judgment against Defendants in amount equal to three times the damages sustained by California Real Parties in violation of the California Act, $10,000 for each violation of the act, and pre-judgment interests on those amounts;

5.    That the Court enter judgment against Defendants in amount equal to three times the damages suffered by Delaware Real Parties under the Delaware Act, $11,000 for each violation of the act, and pre-judgment interests on those amounts;

6.    That the Court enter judgment against Defendants in amount equal to three times the damages suffered by Nevada Real Parties under the Nevada Act, $10,000 for each violation of the act, and pre-judgment interests on those amounts;

7.    That the Court enter judgment against Defendants in amount equal to three times the damages suffered by New York Real Parties under the New York Act, $12,000 for each violation of the act, and pre-judgment interests on those amounts;

8.    That the Court enter judgment against Defendants in amount equal to three times the damages suffered by Tennessee Real Parties under the Tennessee Act, $10,000 for each violation of the act, and pre-judgment interests on those amounts;

9.    That the Court enter judgment against Defendants in amount equal to three times the damages suffered by the Massachusetts Real Parties under the Massachusetts Act, $10,000 for each violation of the act, and pre-judgment interests on those amounts;

10.    That the Court enter judgment against Defendants in amount equal to three times the damages suffered by Virginia Real Parties under the Virginia Act, $10,000 for each violation of the act, and pre-judgment interests on those amounts;

11.    That Relator be awarded the maximum amount pursuant to 31 U.S.C. § 3730(d) of the Federal False Claims Act, and the equivalent State False Claims acts;

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

12.     That Relator plaintiff be awarded all costs associated with this action, including attorneys' fees, and expenses; and

13.     That Real Parties, and each of them, and Relator receive all such other relief as this Court deems just and proper.

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules and Civil Procedure, Relator hereby demands a jury trial.

Dated:  February 3, 2012                    Dermer Behrendt

By: _____
Jeffrey D. Dermer
Attorneys for Relator Plaintiff

Dermer Behrendt
13101 Washington Blvd, Ste 407
Los Angeles, CA 90066
(310) 266-1075

EXHIBIT 1 TO FIRST AMENDED COMPLAINT

Direct Federal Claims

Guam Navy
Base
Misawa AFB
Scoll AFB
Misawa AFB
Whiteman AFB
Offutt AFB
Cannon AFB
Minot AFB
Hill AFB
Crystal City
McChord AFB
Fairchild AFB

State & Municipal Plaintiffs

| State | City |
|-------|------|
| CA | Sacramento |
| CA | Marysville |
| CA | Yucaipa |
| CA | American Canyon |
| CA | San Joaquin |
| CA | El Dorado Hills |
| CA | Orosi |
| CA | National City |
| CA | Coalinga |
| CA | Big Bear Lake |
| CA | Coachella |
| CA | Bridgeport |
| CA | Gridley |
| CA | La Canada Flintridge |
| CA | Livermore |
| CA | San Bernardino |
| CA | Groveland |
| CA | Rancho Cordova |
| CA | El Centro |
| CA | San Fernando |
| CA | El Centro |
| CA | Banning |
| CA | Chowchilla |
| CA | Oakley |
| DE | Townsend |

## EXHIBIT 1 TO FIRST AMENDED COMPLAINT

| | |
|---|---|
| MA | Hardwick |
| MA | Northbridge |
| MA | Melrose |
| MA | Lawrence |
| MA | Fitchburg |
| MA | Chatham |
| MA | Dracut |
| MA | Williamstown |
| MA | Mansfield |
| NV | Yerington |
| NV | Gabbs |
| NV | Round Mountain |
| NY | Ticonderoga |
| NY | Ossining |
| NY | Red Hook |
| NY | Springville |
| NY | Tuxedo Park |
| NY | Tannersville |
| NY | Southampton |
| NY | Monticello |
| NY | Lake Placid |
| NY | Oyster Bay |
| NY | Saratoga Springs |
| TN | Brownsville |
| TN | Mt. Juliet |
| TN | Crossville |
| TN | Cleveland |
| TN | Decatur |
| TN | Athens |
| TN | Shelbyville |
| TN | Dyersburg |
| TN | Lynchbur9 |
| TN | Loudon |
| VA | Crystal City - USA |
| VA | Carrollton |
| VA | Christiansburg |
| VA | Farmville |
| VA | Newport News |
| VA | Rocky Mount |
| VA | Bowling Green |
| VA | Franklin |
| VA | Warm Springs |
| VA | Pulaski |